**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF**
**ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| **NOVA FIRE PROTECTION, INC.**, an Illinois Corporation, | |
| Plaintiff, | Civil Case No.:   1:25-cv-1461 |
| v. | |
| **KIM PRUSA**, an Illinois resident, and **CHICAGO FIRE PROTECTION, LLC**, an Illinois Limited Liability Company, | |
| Defendants. | |

**VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

Plaintiff Nova Fire Protection, Inc. (hereinafter, "Plaintiff"), by and through its attorneys, Buckley Fine LLC, brings this action against Defendants Kim Prusa (hereinafter, "Prusa") and Chicago Fire Protection, LLC, an Illinois limited liability company ("hereinafter, "CF") (collectively, "Defendants") and alleges as follows:

**NATURE OF THE ACTION**

1.      This is an action for injunctive relief and damages arising out of: (a) violation of the Defend Trade Secrets Act, 18 U.S.C. 1836 ("DTSA") by Defendants; (b) Prusa's breach of a confidentiality agreement with Plaintiff; (c) Prusa's breach of her fiduciary duties while employed by Plaintiff; and (d) Defendants' tortious interference with Plaintiff's business expectancy.

2.      Plaintiff seeks to enjoin Defendants' existing and future use of Plaintiff's confidential, proprietary, and trade secret information.  Plaintiff seeks a return of digital assets that Prusa improperly took (to which Plaintiff no longer has access).

1

3.      Before Plaintiff's customer relationships and confidential information are further eroded, Plaintiff seeks injunctive relief to protect the intrinsic value of its customer relationships, confidential, proprietary, and trade secret information, and goodwill. Plaintiff respectfully requests this Court enjoin the Defendants from: (a) using or disclosing any of Plaintiff's confidential, proprietary, and trade secret information, or aiding, assisting, or abetting any of these acts, and further violating any contractual obligations; (b) engaging in or participating in any activity designed to divert Plaintiff's current or prospective clients; and (c) retaining any inventory of documents or materials that contain Plaintiff's confidential, proprietary, and trade secret (by the return or verified destruction thereof). Plaintiff also requests that the Court award any other equitable relief to Plaintiff that the Court deems appropriate.

4.      Plaintiff seeks actual, incidental, compensatory, consequential, and punitive damages because of Defendants' actions and Plaintiff's efforts to recover, preserve, and protect its confidential, proprietary, and trade secret information along with its long-standing customer relationships.

## **PARTIES**

5.       Plaintiff is an Illinois corporation with its principal place of business in Schaumburg, Illinois. Plaintiff is licensed as contractor in the states of Illinois and Indiana. Plaintiff performs work in the states of Illinois and Indiana.

6.      Prusa is a U.S. citizen who is a citizen of the state of Illinois.

7.      CF is an Illinois corporation with its principal place of business in Chicago, Illinois.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this case pursuant to the DTSA. This Court has supplemental jurisdiction over all other claims alleged in this Complaint pursuant to 28 U.S.C. § 1367.

9.      Pursuant to 735 ILCS 5/2-209(a)(1)-(2), this Court has personal jurisdiction over Prusa because Prusa conducted business in the State of Illinois and committed tortious acts within the State of Illinois.

10.     Pursuant to 735 ILCS 5/2-209(a)(1)-(2), this Court has personal jurisdiction over CF because CF is incorporated in the State of Illinois, CF conducts business in the State of Illinois, and committed tortious acts within the State of Illinois.

11.     Pursuant to 28 U.S.C. § 1391(a), venue is appropriate in this District because a substantial part of the events or omissions giving rise to this dispute occurred in this District.

## FACTUAL BACKGROUND

### PRUSA'S EMPLOYMENT WITH PLAINTIFF, TERMINATION OF SAME, AND EMPLOYMENT WITH CF

12.     Plaintiff is a fire safety company based in Schaumburg, Illinois that was founded in 1985. Over the last four decades, Plaintiff has specialized in the design, fabrication, installation, repair, inspection and testing of residential fire sprinkler systems. Plaintiff works with general contractors, property developers, and property owners to design and install fully code-compliant sprinkler systems in new and existing residential structures. Plaintiff also designs, fabricates, and installs fire sprinkler systems for new and existing commercial and industrial structures. Plaintiff provides inspection, testing, service and/or repair of all types of fire protection systems. Plaintiff provides these services across the Chicagoland area and in the State of Indiana. Plaintiff is licensed as a contractor in the states of Illinois and Indiana.

13.     Prusa began working with Plaintiff in May 2006.

14.     While employed by Plaintiff, Prusa was involved with determining projects for which Plaintiff should submit a bid and preparing bids for Plaintiff in Illinois and Indiana.

15.     On May 1, 2009, Prusa signed an Employee Confidentiality Agreement with Plaintiff (the "ECA"). (Exhibit A).

16.     The ECA states that Prusa is required to:

-   Hold Confidential Information received from Plaintiff in strict confidence and exercise a reasonable degree of care to prevent disclosure to others;
-   Not disclose or divulge either directly or indirectly Plaintiff's Confidential Information to others unless first authorized to do so in writing by Plaintiff;
-   Not reproduce Plaintiff's Confidential Information or use that information commercially or for any purpose other than the performance of her duties for Plaintiff; and
-   Upon termination of her relationship with Plaintiff, to deliver to Plaintiff any drawings, notes, documents, equipment and materials received from Plaintiff or originating from activities for Plaintiff.

*Id.*

17.     The ECA defines Confidential Information as "any information of any kind, nature, or description concerning any matters affecting or relating to [Prusa's] services for [Plaintiff], the business or operations of [Plaintiff], and/or the products, drawings, plans, processes, or other data of [Plaintiff]." *Id.*

18.     On October 8, 2012, Plaintiff promoted Prusa to Vice President – Residential Division.

19.     Prusa remained Plaintiff's Vice President – Residential Division until January 17, 2025, which is the date Prusa terminated her employment with Plaintiff. Prusa's resignation letter and Plaintiff's offboarding letter to Prusa are attached as Exhibit B.

20.     Upon submitting her resignation to Plaintiff, Prusa returned a cell phone owned

4

by Nova which she used for work.

21.     The cell phone Prusa returned to Nova had been wiped clean of any and all information, including the phone number assigned to the phone.

22.     CF has been in business as a fire safety company since 2014.

23.     On information and belief, before January 20, 2025, CF did not provide residential fire protection services (Exhibit C, attached hereto and made a part hereof)

24.     On information and belief, before January 20, 2025, CF did not operate a residential fire sprinkler division. *Id.*

25.     On January 20, 2025, three (3) days after Prusa terminated her employment with Plaintiff, Prusa began working as Vice President of CF's new Residential Division. (Exhibit D, attached hereto and made a part hereof).

26.     On information and belief, Prusa solicited employment from CF while Plaintiff employed her.

27.     On information and belief, Prusa accepted an offer of employment with CF before she terminated her employment with Plaintiff.


PRUSA'S CONVERSION OF PLAINTIFF'S CONFIDENTIAL INFORMATION

28.     Shortly after Prusa terminated her employment with Plaintiff, Plaintiff discovered that, beginning no later than August 2024, Prusa, without Plaintiff's authorization, accessed Plaintiff's servers, downloaded documents that contained Plaintiff's confidential, proprietary, and trade secret information (including without limitation highly confidential job cost reports, confidential sales data, bid plans and completed job plans), and sent that information from the e-

mail account Plaintiff assigned to her to one of two personal email accounts, those accounts being "pbandj1653@gmail.com" and "kimprusa@me.com."

29. Plaintiff did not authorize Prusa to download Plaintiff's computer files.

30. Before Prusa terminated her employment with Plaintiff, Plaintiff had no knowledge that Prusa downloaded Plaintiff's computer files.

31. Plaintiff did not authorize Prusa to send Plaintiff's computer files to Prusa's personal email account(s).

32. Before Prusa terminated her employment with Plaintiff, Plaintiff had no knowledge that Prusa sent Plaintiff's computer files to Prusa's personal email account(s).

33. On information and belief, Prusa sent confidential information from Plaintiff's computer files to her personal email account(s) to deprive Plaintiff of (a) contact information and (b) business opportunities.

34. On information and belief, Prusa sent Plaintiff's confidential files to her personal e-mail account(s) to use such information to understand how to bid on residential fire jobs for CF at an amount lower than Plaintiff would bid.

35. On information and belief, before Prusa terminated her employment with Plaintiff, Defendants began using Plaintiff's confidential, proprietary, and trade secret information to compete directly with Plaintiff.

36. On information and belief, Defendants continue to use Plaintiff's confidential, proprietary, and trade secret information to compete directly with Plaintiff.

## PRUSA'S CONCEALED BIDS AND ASSOCIATED JOBS AWARDED TO NOVA

37.     In the scope of Prusa's employment duties as Vice President of Plaintiff's Residential Division, Prusa would receive invitations for Plaintiff to provide fire protection bids on various residential construction projects.

38.     Plaintiff's sales employees have weekly meetings to discuss open bidding matters, potential new projects to bid on, and newly awarded projects (with respective dollar values).

39.     During Plaintiff's weekly sales employee meetings, each salesperson discusses awarded bids with the rest of the attendees.

40.     Plaintiff uses a software program to manage information relating to bid data and bid status.

41.     It is Plaintiff's custom and practice for its sales employees to immediately communicate an invitation they receive to bid on a new job/project from a current or potential client.

42.     Plaintiff's Residential Division employees meet weekly to discuss bids awarded to Plaintiff and the status of Plaintiff's existing projects to ensure, amongst other things, that awarded projects are uploaded to Plaintiff's management software and accounting software, which monitors bid information, cost outlays and job staffing needs for bids Plaintiff is awarded.

43.     Before Prusa terminated her employment with Plaintiff, Prusa was a regular attendee of Plaintiff's weekly sales meetings.

44.     Before Prusa terminated her employment with Plaintiff, Prusa led the Residential Division's weekly meetings.

45.     Plaintiff reasonably expects that sales employees will immediately communicate when a job has been awarded to Plaintiff.

46.     Beginning no later than August 2024, Prusa submitted bids in Plaintiff's name for residential construction projects that required fire protection work, did not communicate to Plaintiff that she had submitted bids on Plaintiff's behalf for those projects, and did not communicate the results of such bid submissions to any employee or representative of Plaintiff (the "Concealed Bids").

47.     On information and belief, beginning no later than August 2024, Prusa began deleting information regarding the Concealed Bids from her Plaintiff-assigned e-mail address and Plaintiff's computer system.

48.     On information and belief, Prusa deleted information regarding the Concealed Bids and did not tell anyone associated with Plaintiff about projects awarded in connection with the Concealed Bids to hide the existence of awarded projects from Plaintiff.

49.     On information and belief, Prusa hid Concealed Bids that were awarded to Plaintiff so that Prusa and CF could be awarded and complete projects after Plaintiff would be fired for failing to perform contracted work because Plaintiff would not have known about the award of the bids due to Prusa's concealment.

50.     Prusa signed the awarded Concealed Bids, purportedly on Plaintiff's behalf, and then intentionally ignored any projects that were awarded to Plaintiff in connection with the Concealed Bids.

51.     Plaintiff's custom and practice is for all sales employees (including Prusa, in her former capacity as Vice President – Residential Division) to save copies of bids in an electronic folder on Plaintiff's computer system, then submit bids via email with a carbon copy to a Plaintiff-associated email address that automatically saves the bids in Plaintiff's management software

system, and all email correspondence with clients on bid related matters are to be carbon copy to the Plaintiff's management software.

52.     Plaintiff's sales employees are expected and directed to save bids in three (3) separate locations – the salesperson's email, the electronic bid folder, and Plaintiff's management software – to ensure Plaintiff does not misplace submitted bids.

53.     On information and belief, Prusa hid the following projects, which were awarded to Plaintiff by ███████████ ("██████") in connection with Concealed Bids, for CF's benefit: (a) ███████████, ███████████ Townhomes, and ███████████ (all awarded on or around November 25, 2024); (b) ███████████ (awarded on August 29, 2024); (c) ███████████ ██ (awarded on or around December 4, 2024); and (d) ███████████ (awarded on or around August 2024 and not added to Plaintiff's computer system until December 11, 2024) (collectively, the "Concealed ██████ Bids").

54.     On information and belief, Prusa hid additional projects awarded to Plaintiff in connection with Concealed Bids for the purpose of benefiting CF.

55.     Prusa never disclosed the projects that were awarded to Plaintiff in connection with Concealed ██████ Bids to anyone associated with Plaintiff.

56.     There is no record of the ███████████ and ███████████ bids (identified above) in Plaintiff's management software.

57.     There is no record of the bid awards for any of the six (6) Concealed ██████ Bids in any of the three (3) locations in which Plaintiff's sales employees are expected and directed to save bids.

58.     There is no record of the estimate calculations for any of the six (6) Concealed ██████ Bids in Plaintiff's computer system.

59. On February 6, 2025, the email address that Plaintiff assigned to Prusa received an email from a representative of ██████ that included attachments regarding payment information for CF. (Exhibit E).

60. On information and belief, Prusa intended to steer ██████ bids that were awarded to Plaintiff to CF.

61. On information and belief, CF knew about Concealed bids that were awarded to Plaintiff during the time in which Prusa was Vice President of Plaintiff's Residential Division and has undertaken efforts to perform work associated with projects that were awarded to Plaintiff.

## PRUSA'S FAILURE TO SUBMIT A BID FOR THE WM RYAN HOMES PROJECT

62. On information and belief, Prusa purposely delayed submitting bids on Plaintiff's behalf while Plaintiff employed her because she planned to submit bids for the same projects on CF's behalf.

63. While Plaintiff employed Prusa, ██████████, a client of Plaintiff, solicited a bid from Plaintiff for a project in Lake Forest, Illinois (the "██████████ Project"). (Exhibit F).

64. Plaintiff expected Prusa to submit a bid for the ██████████ Project on Plaintiff's behalf.

65. Prusa did not submit a bid for the ██████████ Project on Plaintiff's behalf.

66. There is no record of the ██████████ Project bid in any of the three (3) locations in which Plaintiff's sales employees are expected and directed to save bids.

67. There is no record of an estimate calculation regarding the ██████████ Project in Plaintiff's computer system.

68.    On information and belief, Prusa did not submit a bid for the ███████████ Project on Plaintiff's behalf because she planned to submit a bid for the ███████████ Project on CF's behalf.

<u>PRUSA'S DIVERSION OF PROJECTS TO CF WHILE EMPLOYED BY PLAINTIFF</u>

69.    While Prusa worked for Plaintiff, Prusa instructed ██████████, a client of Plaintiff, to wait to finalize the award for a ██████████ project known as "██████."

70.    On January 20, 2025, a representative of ██████████ sent a text message to a business cell phone Plaintiff owned and assigned to Prusa, which stated, "Hey what's up? Just saw your post on LinkedIn." (Exhibit G). A second text by the same representative of ██████████ on the same date to the same cell phone number stated, "Is that why you wanted me to wait to finalize ██████". *Id.*

71.    There is no record of the ██████ project in Plaintiff's management software as a project for which to submit a bid.

72.    There is no record of the ██████ project in any of the three (3) locations in which Plaintiff's sales employees are expected and directed to save bids.

73.    There is no record of an estimate calculation for the ██████ project in Plaintiff's computer system.

74.    Plaintiff, through Prusa, received invitations to submit bids for projects from the following companies who are clients of Plaintiff: ██████, ██████, ████████████ and ██████ ██████ (the "Circumvented Group").

75.    On information and belief, Prusa deleted emails and other information from Plaintiff's computer system regarding the Circumvented Group's invitations to bid on projects.

76.     On information and belief, Prusa deleted emails and other information from Plaintiff's computer system regarding the Circumvented Group's invitations to bid on projects in order to steer such work to CF.

77.     On information and belief, while Plaintiff employed Prusa, Prusa submitted bids to the Circumvented Group on CF's behalf instead of submitting those bids on Plaintiff's behalf.

78.     On information and belief, Plaintiff, through Prusa, received invitations to submit bids for projects from companies other than the Circumvented Group.

79.     Plaintiff has discovered numerous invitations to bid that were sent to Prusa (as Vice President of Plaintiff's Residential Division) that were not entered into Plaintiff's management software as a project to bid.

80.     On information and belief, Prusa deleted emails and other information regarding those invitations to bid on projects from Plaintiff's computer system.

81.     On information and belief, Prusa deleted emails and other information regarding those invitations to bid on projects from Plaintiff's computer system in order to transfer such work to CF.

82.     On information and belief, while Plaintiff employed Prusa, Prusa submitted bids to companies other than the Circumvented Group on CF's behalf instead of submitting those bids on Plaintiff's behalf.

## PRUSA'S USURPATION OF OTHER BUSINESS OPPORTUNITIES THAT BELONGED TO PLAINTIFF

83.     Plaintiff received an invitation for two (2) trade partner events that took place the week of January 20, 2025 (the "Trade Partner Events"), which was the first week CF employed Prusa.

84.     On information and belief, Prusa received invitations to the Trade Partner Events in her capacity as Vice President of Plaintiff's Residential Division.

85.     On information and belief, CF did not receive an invitation to either of the Trade Partner Events.

86.     Prusa attended both of the Trade Partner Events on behalf of uninvited CF and wearing clothing with CF's emblem on it.

87.     During the Trade Partner Events, Prusa solicited business from the businesses that hosted the Trade Partner Events and other businesses that were in attendance.

88.     While Plaintiff employed Prusa, Prusa did not notify any agent or representative of Plaintiff that the Trade Partner Events had been scheduled.

89.     While Plaintiff employed Prusa, Prusa hid the existence of the Trade Partner Events from Plaintiff to benefit CF's business, which interfered with Plaintiff's business.

90.     During a February 5, 2025 meeting of the Northern Illinois Fire Inspectors Association (NIFIA), Prusa stated that CF had recently either submitted or been awarded a project(s) for work on one hundred thirty-five (135) residential units.

91.     CF either bid on, or was awarded, the project(s) for work on one hundred thirty-five (135) residential units within seventeen (17) days after Prusa announced her employment with CF on LinkedIn.

92.     On information and belief, Prusa, while in Plaintiff's employ, worked on the bid for the project(s) for work on one hundred thirty-five (135) residential units on CF's behalf.

## COUNT I – MISSAPPROPRIATION OF TRADE SECRETS UNDER THE DTSA AGAINST DEFENDANTS

93.     Plaintiff incorporates its allegations in Paragraphs 1-92 above.

94. During the course of her employment with Plaintiff, Plaintiff provided Prusa with access to substantial amounts of Plaintiff's confidential, proprietary, and trade secret information that is of tremendous economic value to Plaintiff and not available to the general public.

95. Plaintiff invested significant amounts of time and money to gather this information, which it uses in its business, has taken reasonable measures for this information not to be easily acquired or duplicated by others, and has taken reasonable measures to guard and protect its secrecy.

96. Prusa was legally and contractually obligated to protect the confidentiality of Plaintiff's information. Despite Prusa's obligations, months before she terminated her employment with Plaintiff, Prusa wrongfully, intentionally, without authority, and without authorization, accessed Plaintiff's computer system to misappropriate, duplicate, copy and assert control over essential Plaintiff confidential, proprietary, and trade secret information, specifically including Plaintiff's sales, costs, customer lists, client information, history of bids, and pricing, which Plaintiff uses in interstate commerce.

97. Prusa has misappropriated and continues to misappropriate Plaintiff's confidential, proprietary, and trade secret information.

98. On information and belief, Prusa has engaged in other acts of misappropriation that will be revealed through discovery.

99. By allowing Prusa to use Plaintiff's confidential, proprietary, and trade secret information in her new role to compete directly with Plaintiff, CF has also misappropriated and is misappropriating Plaintiff's confidential, proprietary, and trade secret information.

100.     By allowing Prusa to use Plaintiff's confidential, proprietary, and trade secret information in her new role to usurp Plaintiff's opportunities, CF has also misappropriated and is misappropriating Plaintiff's confidential, proprietary, and trade secret information.

101.     On information and belief, CF has engaged in other acts of misappropriation that will be revealed through discovery.

102.     On information and belief, CF conspired with Prusa to appropriate, take, carry away, conceal, and obtain Plaintiff's trade secrets used to provide services in interstate commerce for the economic benefit of CF.

103.     Unless Defendants are restrained, Defendants will continue to use, divulge, and/or disclose Plaintiff's confidential, proprietary, and trade secret information. As a direct result of Defendants' actions, Plaintiff has suffered, and continues to suffer, irreparable harm for which there is no adequate remedy at law, and which will continue unless this Court enjoins Defendants' actions.

## COUNT II - BREACH OF CONTRACT AGAINST PRUSA

104.     Plaintiff incorporates its allegations in Paragraphs 1-103 above.

105.     The ECA constitutes a valid and enforceable agreement. The ECA's confidentiality provisions are reasonable in scope and necessary to protect Plaintiff's legitimate protectable interests in its long-standing, well established and valuable customer relationships, its confidential information and its goodwill.

106.     Plaintiff performed its duties to Prusa under the ECA by providing continued employment to Prusa.

107.     The ECA prohibits Prusa from taking or using Plaintiff's confidential information for any purpose other than to perform her duties on Plaintiff's behalf.

15

108.     In violation of the ECA, Prusa took Plaintiff's confidential, proprietary, and trade secret information for the purpose of directly competing with Plaintiff.

109.     Plaintiff has been irreparably injured and continues to face irreparable injury as a result of Prusa's breaches and prospective breaches of the ECA. Plaintiff faces the threat of losing the value of its confidential, proprietary, and trade secret information and its relationships with various customers, along with income and goodwill, for which no remedy at law is adequate.

110.     This Court must enjoin and restrain Prusa from further ongoing breach of the ECA's duties and obligations. In addition to a remedy at equity, Plaintiff seeks all compensable damages.

## COUNT III – BREACH OF FIDUCIARY DUTY AGAINST PRUSA

111.     Plaintiff incorporates its allegations in Paragraphs 1-110 above.

112.     Prusa owed fiduciary duties to Plaintiff while Plaintiff employed her.

113.     Those fiduciary duties included the obligation not to improperly retain and transfer Plaintiff's customer lists, customer records, other information relating to customers, other assets, and to refrain from misappropriating or using such property and information for her own benefit.

114.     On information and belief, during her employment with Plaintiff, Prusa solicited, accepted and started employment with CF, now a direct competitor of Plaintiff, in violation of her fiduciary duties and duty of loyalty to Plaintiff.

115.     During her employment with Plaintiff, Prusa took confidential information from Plaintiff and used it for the benefit of herself and CF, now a direct competitor of Plaintiff, in violation of her fiduciary duties and duty of loyalty to Plaintiff.

116.    On information and belief, Prusa's breaches were intentional, willful, and without just cause.

117.    As a result of Prusa's breach of the duty of loyalty to Plaintiff, Prusa has irreparably injured and continues to irreparably injure Plaintiff. Prusa's actions threaten Plaintiff with losing the value of its confidential, proprietary, and trade secret information and its relationships with various customers, along with income and goodwill, for which no remedy at law is adequate.

118.    This Court must enjoin and restrain Prusa from current and ongoing violations of her duties under the ECA. In addition to a remedy at equity, Plaintiff seeks all compensable damages.

## COUNT IV – TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY AGAINST CF

119.    Plaintiff incorporates its allegations in Paragraphs 1-118 above.

120.    Plaintiff has and has had a valid business relationship with its current clients and a reasonable expectation of entering into valid business relationships with third parties.

121.    CF knew of Plaintiff's reasonable expectation of entering into valid business relationships with third parties through information it obtained through Prusa's misappropriation of Plaintiff's confidential information and trade secrets.

122.    On information and belief, CF conspired with Prusa to appropriate, take, carry away, conceal, and obtain Plaintiff's trade secrets that Plaintiff to provide services in interstate commerce.

123.    On information and belief, CF's intentional interference was malicious, unjustified and accomplished through wrongful means, including but not limited to, inducing, aiding or abetting Prusa to wrongfully obtain Plaintiff's confidential information and trade secrets

in an attempt to intentionally weaken Plaintiff and to intentionally and unjustifiably interfere with Plaintiff's business relationships and business expectancies for CF's gain and/or Plaintiff's harm.

124.     On information and belief, CF's intentional interference was malicious, unjustified and accomplished through wrongful means, including but not limited to, inducing, aiding or abetting Prusa's breach of her fiduciary duties and duty of loyalty to Plaintiff in an attempt to intentionally weaken Plaintiff and to intentionally and unjustifiably interfere with Plaintiff's business relationships and business expectancies for CF's gain and/or Plaintiff's harm.

125.     CF's intentional interference prevented Plaintiff's legitimate business expectancy through its business clients and business expectancy to ripen into a business relationship.

126.     CF's intentional interference has caused Plaintiff to suffer irreparable and other significant injuries. In addition to a remedy at equity, Plaintiff seeks actual, incidental, compensatory, punitive, exemplary, and consequential damages, as well as attorney's fees and costs.

## COUNT V – TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY AGAINST PRUSA

127.     Plaintiff incorporates its allegations in Paragraphs 1-126 above.

128.     Plaintiff has a valid business relationships with current clients and a reasonable expectation of entering into valid business relationships with potential new customers.

129.     Prusa, as Vice President of Plaintiff's Residential Division, knew of business relationships Plaintiff had with its existing customers and Plaintiff's reasonable expectation of entering into valid business relationships with potential new customers.

130.     Prusa knew of Plaintiff's reasonable expectation of entering into valid business relationships with potential new customers through information it obtained through Prusa's misappropriation of Plaintiff's confidential information and trade secrets.

131.     On information and belief, Prusa conspired with CF to appropriate, take, carry away, conceal, and obtain Plaintiff's trade secrets that Plaintiff uses to provide services in interstate commerce.

132.     Prusa, without Plaintiff's authorization, intentionally appropriated, took, carried away, or concealed, or by fraud, artifice, or deception trade secrets of Plaintiff used for a product or service used by Plaintiff in interstate commerce to the economic benefit of anyone other than Plaintiff.

133.     The intentional interference by Prusa was malicious, unjustified and accomplished through wrongful means in an attempt to intentionally weaken Plaintiff, to intentionally and unjustifiably interfere with Plaintiff's business relationship and business expectancies, and for Prusa's and CF's gain to Plaintiff's detriment.

134.     Prusa's intentional interference prevented Plaintiff's legitimate business expectancy through its existing customers and potential new customers to ripen into valid business relationships.

135.     Prusa's intentional interference has caused Plaintiff to suffer damages, irreparable and other significant injuries. In addition to a remedy at equity, Plaintiff seeks actual, incidental, compensatory, punitive, exemplary and consequential damages, and attorney's fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Nova Fire Protection, Inc. seeks judgment in its favor and an Order against Defendants Kim Prusa and Chicago Fire Protection, LLC that grants the following relief:

A.    Temporarily, preliminarily and permanently enjoining the Defendants and all parties in active concert or participation with them, from using or disclosing any of Plaintiff's confidential and/or proprietary information;

B.    Temporarily, preliminarily and permanently enjoining the Defendants from engaging in or participating in any employment or activity, insomuch as such activity is directed to or designed to solicit or divert any of Plaintiff's customers or potential customers that the Defendants contacted, targeted or serviced, or about which they had access to confidential information while Prusa was in Plaintiff's employ;

C.    Doing any other act or thing likely to damage Plaintiff's goodwill and reputation;

D.    Ordering Defendants and all parties in active concert or participation with them, to return to Plaintiff all originals and copies of all files, devices and/or documents that contain or relate to Plaintiff's confidential, proprietary, and trade secret information, including without limitation, access to all electronic accounts, as well as all computers, electronic media and electronic storage devices;

E.    Ordering Defendants and all parties in active concert or participation with them, to preserve all documents, data, and electronic information and to produce for inspection and imaging all computers and other electronic storage devices and email accounts belonging to, under the control of, accessible to, or operated by the Defendants;

F.    Awarding Plaintiff actual, incidental, compensatory, and consequential damages to be proven at trial;

G.     Awarding Plaintiff exemplary or punitive damages in an amount to be proven at trial due to Defendants' willful and malicious activities;

H.     Awarding Plaintiff its attorney's fees and costs incurred in this action, in view of the exceptional nature of Prusa's deliberate infringing actions, in accordance with the Defend Trade Secrets Act;

I.     Require Prusa to return all money received as a result of her fraudulent inducement; and

J.     Award Plaintiff such further relief as the Court deems necessary and just.

Dated: February 11, 2025                     Respectfully submitted,

By: */s/ Samuel J.H. Weyers*
Samuel J. H. Weyers (IL Bar No. 6307309)
Ronald J. Kowalczyk (IL Bar No. 6274373)
sweyers@buckleyfinelaw.com
rkowalczyk@buckelyfinelaw.com
Buckley Fine LLC
201 South Grove Street, 4th Floor
Barrington, IL  60010
Telephone: (847) 381-0011

**_Attorneys for Plaintiff, Nova Fire Protection, Inc._**

## CERTIFICATION

Under penalties as provided by law pursuant to 28 U.S.C. § 1746, the undersigned certifies under penalty of perjury that the foregoing is true and correct, except as to matter therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that s/he verily believes the same to be true.

Dated: February 10, 2025    Nova Fire Protection, Inc., an Illinois corporation

By:_____

Title: _____CEO_____

22